IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FIRAS HASSAN ALNABHANI, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | |
| | § | |
| JOSHUA JOHNSON, Acting Dallas | § | No. 3:25-CV-3034-G-BW |
| Field Office Director for Enforcement | § | |
| and Removal Operations, U.S. | § | |
| Immigration and Customs Enforcement, | § | |
| et al., | § | |
|     Respondents. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is the Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief filed by Petitioner Firas Hassan Alnabhani, a person who is represented by counsel and is detained by immigration authorities. (*See* Dkt. No. 1 ("Pet.").)  Respondents have filed a response (*see* Dkt. No. 5 ("Resp.")) and supporting appendix (*see* Dkt. No. 6 ("App.")), and Alhabhani has filed a reply (*see* Dkt. No. 7 ("Reply")).  This matter has been referred to the undersigned magistrate judge for findings, conclusions, and a recommendation by Special Order 3-251.  (*See* Dkt. No. 3.)

For the reasons explained below the undersigned magistrate judge recommends that the Court deny the petition and any related requests for declaratory or injunctive relief.

## I. BACKGROUND

Alnabhani entered the country on an F-1 student visa on February 29, 2012. (Pet. ¶ 2.) His status was terminated on February 17, 2013, after which a removal order was entered in absentia in 2014. (*Id.* ¶¶ 2, 27.) Alnabhani alleges that his wife, a United States citizen, filed a petition for alien relative (Form I-130) in 2020, which has been approved and makes him eligible for adjustment of status. (*Id.* ¶¶ 3, 28.) Based on that approval, he requested on December 14, 2022, that the Department of Homeland Security ("DHS") join a motion to reopen his removal order, but that request apparently remains pending. (*Id.* ¶ 3.)

Alnabhani was arrested for a misdemeanor offense in 2025 but was acquitted a trial. (*Id.* ¶ 4.) Nevertheless, he was taken into custody by Immigration and Customs Enforcement ("ICE") on November 5, 2025, and has been held in custody since based on the removal order. (*Id.*) The agency has informed Alnabhani of its intent to deport him. (*Id.* ¶ 5.)

Alnahbani asserts that he is a stateless Palestinian who seeks protection against removal to a third country of which he is not a citizen. (*Id.* ¶¶ 6-7.) He asks the Court to prevent his removal and order his release from detention while he pursues an adjustment of his status based on his wife's approved I-130 petition. (*Id.* ¶ 7.) Alnabhani alleges that his removal prior to adjudication of a motion to reopen removal proceedings violates procedural due process and the Suspension Clause, asserts that his re-detention without an individualized hearing violates substantive

and procedural due process, and requests that he be released while the petition is pending.  (*See* Pet. ¶¶ 36-65.)

Respondents assert that Alnabhani acknowledged during removal proceedings that he is an Iraqi citizen, not a stateless Palestinian.  And because officials are attempting to remove him to Iraq, there is no suggestion that he will be removed to a third country.  Respondents provide supporting testimony that Alnabhani's request to reopen removal proceedings in 2014 was denied and that his request for adjustment of status following his wife's I-130 petition also has been denied.  (Resp. 2-3; App. 3.)  Respondents provide the declaration of Celestina Pena, an ICE supervisory detention officer, who states that the approval of Alnahbani's wife's I-130 petition authorized him to apply for a change of status using Form I-485.  (App. 3.)  Alnabhani did so, but his application for a change of status was denied on May 26, 2021.  (App. 3.)  Pena testifies that ICE believes Alnabhani's deportation to Iraq is "significantly likely in the reasonably foreseeable future."  (App. 3.)  Alnabhani was served with a Notice of Removal on December 16, 2025.  (App. 3.)  DHS states that it is attempting to remove Alnabhani to his country of origin, Iraq, and believes such removal to Iraq is significantly likely in the reasonably foreseeable future.  (App. 3.)  If DHS is unable to remove him to Iraq within a reasonable time, it will consider potential third-county removal "in accordance with the law" but will not remove him to a country where his life or freedom would be threatened.  (App. 3-4.)

In reply, Alnabhani advances his argument that he is a stateless Palestinian, providing documents showing that his entry visa noted his Palestinian nationality. (Reply at 2-3; Dkt. No. 7-1 at ECF p. 4.)  He asserts that the immigration judge and his attorney during those proceedings relied on an erroneous Notice to Appear ("NTA") that mistakenly described him as a national and citizen of Iraq.  (Reply at 3.)  He also asserts that his continued detention is unlawful because his removal is neither imminent nor reasonably foreseeable.  (Reply at 4-6.)

## II.  LEGAL STANDARDS

Relief under a writ of habeas corpus is available to a person held "in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(c)(3).  "[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the *P. B. v. Bergami*, No. 3:25-CV-02978-O, 2025 WL 3632752, at *2 (N.D. Tex. Dec. 13, 2025) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)).  "Habeas exists only 'to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose.'"  *Id.* (quoting *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976)).

## III. ANALYSIS

**A.    Alnahbani has not shown that his removal or detention violates due process.**

While Alnabhani expends considerable effort in arguing that he is a stateless Palestinian, not an Iraqi native or citizen, he does not appear to be asking this Court to make that legal determination.  And such a request had been made, it does not

appear that it would be a proper use of § 2241 to have this Court reconsider the citizenship determination made by the immigration court. *See* 8 U.S.C. § 1252(a)(5), (b)(9). Instead, the undersigned reads Alnabhani's first claim to center on his contention that a stay of removal is necessary to allow him to pursue a motion to reopen removal proceedings so he can advance the claim that he is a Palestinian who should not be removed to a third country.

Respondents have provided evidence that Alnabhani moved to reopen proceedings in 2014. (App. 3 ¶ 10.) His motion was denied, and he apparently did not appeal that denial. (App. 3 ¶ 11.) Under 8 U.S.C. § 1229a(c)(7)(A), an alien may file only one motion to reopen proceedings. Alnabhani alleges that he requested in 2022 that DHS join a motion to reopen "the removal order" and says the request has been pending since. Alnabhani asks the Court to stay his removal and order his release until his request to reopen removal proceedings has been determined and he has completed any resulting proceedings. Alnabhani, however, has not explained beyond his own assertion how due process guarantees an apparently open-ended right to await a response from DHS to join in another motion to reopen proceedings or that his removal prior to such proceeding would deprive him of any required process.

Similarly, Alnabhani requests that the Court block his removal because he is presumptively eligible for a change in status based on the approval of his wife's I-130 petition. The approval of her I-130 petition, however, did not effect any change to

Alnabhani's status—it merely established her relationship to him.  *See Metreveli v. Flanagan*, No. 25-CV-8039 (MKV), 2025 WL 3496754, at *1 (S.D.N.Y. Dec. 5, 2025).  Once the I-130 is approved, the subject alien relative must apply separately for adjustment of his status.  *See id.*  Here, Respondents provide testimony that Alnabhani made such an application—through Form I-485—and that his request for a change of status was denied on May 26, 2021.  (App. 3 ¶ 13.)  Alnabhani has not shown that removal or continued detention under these circumstances violates due process.  *Cf. Morao v. Noem*, No. 2:25-CV-02588-MMD-NJK, 2026 WL 221549 (D. Nev. Jan. 27, 2026) (denying due-process claim where petitioner asserted that detention prevented him from advocating pending I-485 application).

**B.    Alnabhani has not shown that he is entitled to any relief through the Suspension Clause.**

"The Suspension Clause provides that '[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.'"  *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 116 (2020) (quoting U.S. Const., Art. I, § 9, cl. 2).  Alnahbani contends that his removal without first obtaining a review of his case for changed circumstances since the removal order became final in 2014 would violate the Suspension Clause.  (Pet. ¶ 49.)  His claim under the Suspension Clause is not developed beyond a conclusory assertion and a string citation to nonbinding and apparently inapplicable decisions.  (*See* Pet. ¶¶ 49-50.)  *See Nianga v. Wolfe*, 435 F. Supp. 3d 739, 746 (N.D. Tex. 2020) (denying relief in part because petitioner "leaves his Suspension Clause challenge

-6-

undeveloped").  In the absence of any development, the undersigned fails to perceive how Alnabhani's removal, if it occurs after the process that has been provided to him, would violate the Suspension Clause.  *See Puerto-Hernandez v. Lynch*, 808 F. Supp. 3d 802, 812-13 (W.D. Mich. 2025).[1]

### C.   Alnabhani has not shown that his detention violates due process.

In his third claim, Alnabhani contends that his re-detention without an individualized hearing to assess his flight risk or danger violates due process.  (Pet. ¶¶ 51-61.)  He contends that where, as here, the government permitted him to remain at liberty for years, it cannot re-detain him on the removal order without "first proving through individualized and fair hearings before this Court why such action is now necessary to prevent danger to the community or risk of flight."  (Pet. ¶ 57.)

Again, Alnahbani's assertion of a constitutional or legal violation is undeveloped by any citation to statutes or regulations that require the additional

---

[1] It is, of course, Petitioner's burden to establish that he is entitled to the writ.  *See Villanueva v. Tate*, 801 F. Supp. 3d 689, 696–97 (S.D. Tex. 2025) ("The habeas petitioner 'bears the burden of proving that he is being held contrary to law[.]'" (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011))).  Alnabhani's claims articulated in the petition are largely premised on general precepts or conclusory assertions without an explanation of the particular constitutional, statutory, regulatory, or other underpinning that leads to a conclusion that he is being held contrary to law, followed by a string citation to multiple outside-circuit decisions that he presumably believes are helpful to his position. The onus is on Petitioner, however, to do the basic work of advocacy by explaining the legal foundation for his argument and how the cited authority illustrates or otherwise supports his argument, either directly, by analogy, or in some other manner.  It is not incumbent upon the Court to ponder the overarching legal concept, review each of his cited authorities, discern the most tenable argument for the relief that he seeks, and then address that argument it constructed.  *See Autry v. Ahern Rentals, Inc.*, No. EP-19-CV-00154-DCG, 2025 WL 1511106, at *4 (W.D. Tex. May 20, 2025) ("[I]n our adversarial system, it is a party's obligation—not the courts'—to develop arguments.").

proceedings to which he is claiming a right.  While Alnabhani hopes that his removal order someday will be reconsidered, he seemingly acknowledges that, as for now, he is subject to a final removal order.  As such, he is detained pursuant to 8 U.S.C. § 1231, which requires detention for at least 90 days and, if not removed during that period, allows for continued detention in some circumstances.  *See Agyei-Kodie v. Holder*, 418 F. App'x 317, 318 (5th Cir. 2011).  And, "[i]t is presumptively constitutional for an alien to be detained for six months after a final order of removal."  *Id.* (citing *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001)).

In reply, Alnabhani explains—perhaps for the first time—that his continued detention violates due process under the principles of *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not foreseeable or imminent.  (*See* Reply at 4-5.)  But he has been detained only four months, less than the presumptively permissible six-month period allowed in *Zadvydas* and the cases Alnabhani cites in support of his argument.  (*See* Reply at 6 (citing cases in which relief was granted where petitioners were held months after the six-month period).)  His assertion of a due process violation under *Zadvydas* is premature.  *See Kokoreva v. Unknown Party*, No. 3:25-CV-1700-K-BN, 2025 WL 2981626, at *4 (N.D. Tex. Oct. 7, 2025), *accepted*, 2025 WL 2980642 (N.D. Tex. Oct. 22, 2025).

On March 6, Alnabhani filed a Notice of Recent Developments Regarding Petitioner's Removal.  (Dkt. No. 8.)  In it, he contends that "the considerable escalation of conflict in the Middle East" makes it less likely that "removal to Iraq or

Palestine will occur within the reasonably foreseeable future." (*Id.* at 1.) Seemingly now acknowledging that he is within the presumptively constitutional period of detention, Alnabhani asserts that the military operations prove that he is unlikely to be removed in the near future. *See Phuong Van Truong v. Bondi*, No. SA-25-CA-1947-XR, 2026 WL 475296, at *2 (W.D. Tex. Feb. 11, 2026) ("A detained person who brings a *Zadvydas* claim *before* the presumptively reasonable six-month period must *prove* that there is no significant likelihood of removal in the reasonably foreseeable future." (internal quotation marks omitted)). Continuing a theme from his briefing, however, Alnabhani's mere assertion that military activity in the region will delay or prevent his removal is far from proof of that fact.

**D.    Alnabhani's has not shown that this Court should order that he be released pending resolution of the petition.**

In his fourth claim, Alnabhani requests that the Court order that he released while the merits of his petition are resolved. (Pet. ¶¶ 62-65.) Even if the Court has authority to provide that relief, he has not demonstrated why such relief is required by law or equity. In any event, upon the resolution of petition, his request would become moot.

## IV.  RECOMMENDATION

The Court should deny Petitioner Firas Hassan Alnabhani's petition for writ of habeas relief under 28 U.S.C. § 2241.

**SO RECOMMENDED** on March 9, 2026.

BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).